## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DEMOND SOLOMON**                                    **CIVIL ACTION**

**VERSUS**                                            **NO.  16-1752**

**W.S. MCCAIN, WARDEN**                               **SECTION "S" (4)**


### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.      Factual and Procedural Background

The petitioner, Demond Solomon ("Solomon"), is a convicted inmate incarcerated in the B.B. "Sixty" Rayburn Correctional Center in Angie, Louisiana.[2]  On August 27, 2009, Solomon and two co-defendants, Dwayne Butler and Michael Curtis, were indicted by a Grand Jury in Orleans Parish for the second degree murder of Lindsey Singleton.[3]  Butler eventually entered a plea to the amended charge of being an accessory after the fact to second degree murder.[4]

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 7, Indictment, 8/27/09.

[4]St. Rec. Vol. 1 of 7, Minute Entry, 4/27/11; Indictment, 8/27/09 (handwritten amendment dated 4/27/11).

The record reflects that,[5] on the evening of March 29, 2009, Danielle Singleton was on her cellphone while sitting in her parked car with the door open in the driveway at 1223 South Johnson Street in the B.W. Cooper Housing Development.  Her brother, Lindsey Singleton, approached her to ask for a cigarette before he returned to the porch where ten or fifteen people were gathered, including Calvin Renkins and their cousin, Venezia Singleton.  Danielle suddenly heard gunshots and ducked down.  When she lifted her head, she saw a white Pontiac Grand Prix speed out of the driveway in front of her car.  Danielle did not see the license plate or the driver of the car.  During the shooting, she looked back towards her brother, and saw him running towards her.  He grabbed his back, turned to run to the other side of the driveway, and then collapsed on a porch.

Calvin Renkins was sitting on the porch with Lindsey when the white Pontiac Grand Prix stopped for a speedbump halfway through the driveway in front of them, and a man he later learned was named "Demond" rolled down the window of the front passenger seat and pointed a gun at the crowd.  Renkins ran as the shooting started.  The victim's cousin Venezia, who was grazed by a bullet in the shooting, also identified Solomon as the shooter and Curtis as the driver of the white Grand Prix.

Lindsey died from a single gunshot to his mid-back, where the bullet pierced his left lung causing massive hemorrhaging into the left chest cavity and respiratory tract, then traveled up into his neck and mouth.  The officers retrieved from the scene two CBC .40 S&W caliber cartridge casings.

Solomon and Curtis jointly were tried before a jury on February 14 through 16, 2011, and each was found guilty of the responsive offense of manslaughter by a ten to two verdict of the

---

[5]The facts were taken from the published opinion of the Louisiana Fourth Circuit Court of Appeal on direct appeal.  *State v. Curtis*, 112 So.3d 323, 326-331 (La. App. 4th Cir. 2013); St. Rec. Vol. 5 of 7, 4th Cir. Opinion, 2011-KA-1676, 3/13/13.

jury.[6]  At a hearing held on May 26, 2011, the Trial Court denied Curtis's motion for a new trial

and Solomon's motion for post-verdict judgment of acquittal.[7]  After waiver of legal delays, the

Court sentenced both Curtis and Solomon to forty years in prison at hard labor.[8]

On direct appeal to the Louisiana Fourth Circuit Court of Appeal, Solomon's appointed

counsel asserted three errors:[9] (1) the state trial court erred when it denied Solomon's motion to

suppress Renkins's out-of-court identification as suggestive; (2) the evidence was insufficient to

support the verdict where the State failed to negate the possibility of misidentification and the

witness identifications were unreliable; and (3) Solomon's constitutional rights were violated by

the lack of a unanimous verdict.  On March 13, 2013, the Louisiana Fourth Circuit affirmed

Solomon's conviction and sentence finding no merit in the issues raised.[10]

The Louisiana Supreme Court denied Solomon's related writ application without stated

reasons on November 1, 2013.[11]  Solomon's conviction was final under federal law ninety (90)

days later, on January 30, 2014, when he did not file a writ application with the United States

Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (time for filing for certiorari

---

[6]St. Rec. Vol. 1 of 7, Trial Minutes, 2/14/11; Trial Minutes, 2/15/11; Trial Minutes, 2/16/11; Minute Entry, 2/16/11; St. Rec. Vol. 3 of 7, Trial Transcript (closing arguments), 2/16/11; St. Rec. Vol. 4 of 7, Trial Transcript, 2/14/11; St. Rec. Vol. 5 of 7, Trial Transcript, 2/15/11; Trial Transcript, 2/16/11.

[7]St. Rec. Vol. 1 of 7, Sentencing Minutes, 5/26/11; Motion for Post-Verdict Judgment of Acquittal, 5/26/11; St. Rec. Vol. 5 of 7, Sentencing Transcript, 5/26/11.

[8]St. Rec. Vol. 1 of 7, Sentencing Minutes, 5/26/11; St. Rec. Vol. 5 of 7, Sentencing Transcript, 5/26/11. Curtis was later resentenced as a multiple offender to serve 80 years in prison at hard labor.  St. Rec. Vol. 1 of 7, Minute Entry, 6/22/12.  The State withdrew the multiple bill filed against Solomon.  St. Rec. Vol. 1 of 7, Multiple Bill, 5/26/11; Minute Entry, 10/5/12.

[9]St. Rec. Vol. 4 of 7, Appeal Brief, 2011-KA-1676, 3/12/12.  The appeal for both Curtis and Solomon were jointly considered.  The resolution of Curtis's appeal and post-conviction review are not relevant here.

[10]*Curtis*, 112 So.3d at 323; St. Rec. Vol. 5 of 7, 4th Cir. Opinion, 2011-KA-1676, 3/13/13.

[11]*State v. Solomon*, 125 So.3d 419 (La. 2013); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2013-KO-0831, 11/1/13; La. S. Ct Writ Application, 13-KO-831, 4/16/13 (dated 4/11/13); St. Rec. Vol. 5 of 7, La. S. Ct. Letter, 2013-KO-831, 4/16/13.

with the United States Supreme Court is included in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).

On November 10, 2014, Solomon signed and submitted to the state trial court an application for post-conviction relief in which he asserted the following grounds for relief:[12] (1) he was denied effective assistance of counsel on appeal when his appointed counsel failed to raise as error that the jury was exposed to inadmissible hearsay testimony where the State's witnesses identified Demond Solomon as the shooter based on information received from other people who were not available for cross-examination; (2) he was denied effective assistance of counsel on appeal when his appointed counsel failed to assert that the conviction was due to prosecutorial misconduct and judicial abuse of discretion during trial; (3) he was denied effective assistance of counsel on appeal when his appointed counsel failed to assert the Trial Court erred by denying the pretrial motion to suppress without examining or deciding the admissibility of the actual photographic lineup; and (4) he was denied effective assistance of counsel on appeal when his appointed counsel failed to assign as error the state trial court's failure to remove manslaughter from the jury instructions and list of responsive verdicts.

On December 14, 2014, the state trial court denied Solomon's application finding that the first two claims were not supported by the record and the third and fourth issues were procedurally barred under La. Code Crim. P. art. 930.4 because they were raised and rejected on direct appeal.[13]

The Louisiana Fourth Circuit denied Solomon's related writ application on March 4, 2015, finding no error in the Trial Court's ruling.[14]  The Louisiana Supreme Court denied his subsequent

---

[12]St. Rec. Vol. 1 of 7, Application for Post-Conviction Relief, dated 11/10/14.

[13]St. Rec. Vol. 1 of 7, Application for Post-Conviction Relief, dated 11/10/14.

[14]St. Rec. Vol. 6 of 7, 4th Cir. Order, 3/4/15; 4th Cir. Writ Application, 2015-K-175, 2/19/15 (dated 1/8/15).

writ application on February 5, 2015, for failure to show that he received ineffective assistance of counsel under the standards set forth in *Strickland v. Washington*, 466 U.S. 688 (1984) as applied to appellate counsel pursuant to *Smith v. Robbins*, 528 U.S. 259 (2000).[15]

## II.    Federal Habeas Petition

On March 1, 2016, the Clerk of this Court docketed Solomon's petition for federal habeas corpus relief in which he asserts five grounds for relief:[16] (1) he was denied effective assistance of counsel on appeal because counsel failed to assert that the jury was exposed to inadmissible hearsay testimony from the State's witnesses who identified Demond Solomon as the shooter based on information received from other people and the other people were not available for cross-examination; (2) he was denied effective assistance of counsel on appeal when his appointed counsel failed to assert that the conviction was due to prosecutorial misconduct and judicial abuse of discretion during trial in addressing the removal of the makeup obscuring Solomon's facial tattoos at trial; (3) he was denied effective assistance of counsel on appeal when his appointed counsel failed to challenge the denial of the pretrial motion to suppress as an abuse of discretion when the Trial Court did not examine or decide the admissibility of the actual photographic lineup; (4) he was denied effective assistance of counsel on appeal when his appointed counsel failed to assign as error the state trial court's failure to remove manslaughter from the jury instructions list of responsive verdicts; and (5) Louisiana law is unconstitutional where it allowed for a non-unanimous verdict in a non-capital felony case.

---

[15]*State ex rel. Solomon*, 183 So.3d 506 (La. 2016); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2015-KH-0688, 2/5/15; La. S. Ct. Writ Application, 15-KH-688, 4/8/15 (dated 4/1/15); St. Rec. Vol. 1 of 7, La. S. Ct. Letter, 2015-KH-688, 4/8/15.

[16]Rec. Doc. No. 1.

The State filed a response in opposition to the petition urging that the claims underlying the first two grounds of ineffective assistance were in procedural default for lack of a contemporaneous objection at trial.[17]  In addition, all of the claims were meritless because appellate counsel had good reason not to raise the procedurally defaulted and frivolous claims on appeal.

## III.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[18] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on February 28, 2016.[19]   The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default."  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes the timeliness of the filing of Solomon's petition.  The State suggests, however, that the arguments underlying the first two ineffective assistance of appellate counsel

---

[17]Rec. Doc. No. 17.

[18]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[19]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court docketed Solomon's petition on March 1, 2016 and it was deemed filed with the Court on June 9, 2016, when the filing fee was received after denial of pauper status.  Solomon dated his signature on the form petition on February 28, 2016, which is the earliest date appearing in the record on which he could have presented the pleadings to prison officials for mailing to a federal court.  The fact that he paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. See *Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if the filing fee is not paid at time of mailing) (citing *Spotville*, 149 F.3d at 376).

claims may not be exhausted and are in procedural default.  While this may be true, the State cannot and has not asserted that the ineffective assistance of counsel claims, the only claims before this Court, are unexhausted or in procedural default.  The Louisiana Supreme, in the last reasoned state court opinion on the relevant issues, addressed the lack of merit to the claims under the *Strickland* standards.  It is that opinion which is entitled to deference under the AEDPA's standards set forth in this report.  The procedural default defense, therefore, is not properly asserted and must be rejected.  The Court will proceed to the substance of Solomon's claims.

## IV.   <u>Standards for a Merits Review</u>

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is

that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 134 S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## V.    <u>Effective Assistance of Appellate Counsel (Claim Nos. 1 - 4)</u>

Solomon alleges that he was denied effective assistance of counsel on direct appeal because of counsel's failure to raise certain issues. Specifically, he claims that his appellate counsel should have asserted the following claims on appeal: (1) the jury was exposed to inadmissible hearsay testimony from the State's witnesses whose identifications were based on information received from other people who could not be cross-examined; (2) his conviction was obtained through prosecutorial misconduct and judicial abuse of discretion during trial because the State requested in front of the jury that he be required to remove his makeup to reveal his facial tattoo; (3) the denial of the pretrial motion to suppress was an abuse of discretion when the Court did not examine or decide the admissibility of the actual photographic lineup; and (4) the state trial court failed to remove manslaughter from the jury instructions list of responsive verdicts after hearing the evidence presented at trial.

Solomon raised these claims to the state courts on post-conviction review. After unsuccessful review in the trial and appellate courts, the Louisiana Supreme Court denied relief

on Solomon's claims finding that he failed to show that he received ineffective assistance under *Strickland* as applied to appellate counsel by *Smith*.

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010). Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of Supreme Court precedent.

A person convicted of a crime is entitled to effective assistance of counsel in his first appeal of right. *Evitts v. Lucey*, 469 U.S. 387, 394 (1985). As relied upon by the Louisiana Supreme Court, the general standard for judging performance of trial counsel established in *Strickland* also applies to claims of ineffective appellate counsel. *Smith*, 528 U.S. at 285; *Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir.1998).

In *Strickland*, the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See Strickland*, 466 U.S. at 687. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-

88.  The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances.  *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009).  The reviewing court must "judge . . .  counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689).  "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."  *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at 689).  As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.  *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010).  Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice."  *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695).  In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at. 694).  This standard requires a "substantial," not just "conceivable," likelihood of a different result.  *Harrington*, 562 U.S. at

112.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986).  Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief.  *Miller*, 200 F.3d at 282 (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."  *Harrington*, 562 U.S. at 105.  The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA's standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.*, at 105 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009)).  The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)."  *Id*. (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n.2).

Applying these considerations to a claim that appellate counsel was constitutionally ineffective under *Strickland*, petitioner must show that his appellate counsel unreasonably failed

to discover and assert a nonfrivolous issue and establish a reasonable probability that he would have prevailed on this issue on appeal but for his counsel's deficient representation. *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001); *Smith*, 528 U.S. at 285-86.

Effective appellate counsel are not required to assert every nonfrivolous available ground for appeal. *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998) (citing *Evitts*, 469 U.S. at 394). On the contrary, the Supreme Court has long recognized that appellate counsel filing a merits brief need not and should not argue every nonfrivolous claim; instead, appellate counsel may legitimately select from among them in the exercise of professional judgment to maximize the likelihood of success on appeal. *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983); *see also*, *Smith*, 528 U.S. at 287-88. Appellate counsel has the discretion to exclude even a nonfrivolous issue if that issue was unlikely to prevail. *See Anderson v. Quarterman*, 204 F. App'x 402, 410 (5th Cir. 2006) ("The issues that Anderson argues his counsel should have raised on direct appeal ... lack merit. As such, failure to raise these issues did not prejudice Anderson."); *Penson v. Ohio*, 488 U.S. 75, 83-84 (1988) (noting that courts have refused to find counsel ineffective when the proposed appellate issues are meritless); *Kossie v. Thaler*, 423 F. App'x 434, 437 (5th Cir. 2011) (recognizing the Supreme Court's basic rule that the presumption that appellate counsel was effective will be overcome only when the claims not asserted are stronger than those that were in fact raised). Thus, because one of appellate counsel's important duties is to focus on those arguments that are most likely to succeed, counsel will not be held ineffective for failure to raise every conceivable issue. *Smith*, 528 U.S. at 288; *Jones*, 463 U.S. at 754.

In this case, Solomon has failed to establish that any of the issues he would have had appellate counsel assert are nonfrivolous or likely to have been successful, or that his appellate counsel was ineffective under the foregoing Supreme Court standards.

A.    **Hearsay Testimony**

In his first claim, Solomon contends that appellate counsel should have challenged the hearsay nature of the testimony that they obtained the name of the shooter, "Demond Solomon," from other people in the neighborhood who were not present at trial to be cross-examined.  The State argues here that this issue could not have been asserted on appeal because there was no contemporaneous objection made at trial when the testimony was introduced.  Thus, appellate counsel could not raise a claim not properly preserved for appeal.

As generally referenced by the State, Louisiana law provides that a defendant cannot assert an error in the admissibility of evidence that does impact a substantial right of the party and was not preserved at trial by contemporaneous objection.  *See* La. Code Crim. P. art. 841(A); La. Code Evid. art. 103.  The record reflects that Solomon did not object at trial to the testimony of either Calvin Renkins or Venezia Singleton when they each acknowledged learning the shooter's name from other people.  His appellate counsel did not perform deficiently in failing to assert a claim that was not preserved for review and would have been unsuccessful, if not frivolous, on appeal.

Furthermore, Solomon has failed to assert that the allowance of the testimony without the ability to cross-examine the other people amounted to error.  The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  The Confrontation Clause therefore prohibits admission of "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). The *Crawford* Court indicated that testimonial statements include "ex parte in-court testimony or its functional equivalent - that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-

14

examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially." *Id*. at 51 (internal quotation and citation omitted); *see generally Bullcoming v. New Mexico*, 564 U.S. 647, 658 (2011) (recognizing the *Crawford* standard as the controlling doctrine of the Court).

In this case, Solomon suggests that his appellate counsel should have challenged the fact that he was denied the right to confront the people who provided the name "Demond Solomon" to the State's witnesses. As outlined previously, both Renkins and Venezia identified the face of the shooter and learned his name after the incident from people in the neighborhood.

Even assuming that the out-of-court statements, those attaching the name Demond Solomon to the tattoo-faced man who shot from the car, were inadmissible or objectionable hearsay, the United States Fifth Circuit Court of Appeals has explained that a violation of the Confrontation Clause does <u>not</u> always warrant relief:

> [V]iolations of the Confrontation Clause are still subject to harmless error analysis . . . To determine whether the error was harmless, we consider the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and of course, the overall strength of the prosecution's case.

*Hafdahl v. Johnson*, 251 F.3d 528, 539-40 (5th Cir. 2001) (quotation marks omitted); *Gochicoa v. Johnson*, 118 F.3d 440, 446 (5th Cir. 1997). "The determination of whether the evidence is 'crucial' or 'devastating' . . . recognizes that the erroneous admission of unreliable hearsay may nonetheless be harmless in light of other evidence at trial; by examining whether hearsay was 'crucial' or 'devastating,' the court seeks to determine whether the impermissible hearsay evidence was sufficiently damaging to the defense to warrant reversal." *Gochicoa*, 118 F.3d at 446-47 (citations omitted); *Gochicoa v. Johnson*, 238 F.3d 278, 286, 286 n.11 (5th Cir. 2000).

The particular testimony about which Solomon complains was neither crucial nor critical to establishing the elements of the crime charged or the actual verdict.  The identifications by Renkins and Venezia were based on photographic lineups and recognition of the distinctive features, including the tattoo, that Solomon had on the night of the shooting, in his mug shots and which he tried to hide at trial by covering the tattoo with make-up.  The identifications by Renkins and Venezia were distinct from the later discovery of the shooter's name.

The testimony showed that, when the window went down on the white Grand Prix, both Renkins and Venezia saw the person in the front seat holding the gun and was able to select his photograph from the lineups they were individually shown later by the police.[20]  The relevant point is that Renkins and Venezia identified the gunman from the photographic lineup, without regard for a name.

Based on this testimony and a review of the trial record, the discovery of Solomon's name and the fact that it was provided to Renkins and Venezia by other people was not crucial to identifying Solomon as the perpetrator and was not devastating to the defense.  As such, there was no basis for Solomon's appellate counsel to have urged this claim on direct appeal, and counsel was not deficient for failing to do so.

The denial of relief on this issue was neither contrary to nor an unreasonable application of Supreme Court law.  Solomon is not entitled to relief on this claim.

**B.    Motion to Remove Makeup before the Jury**

In his second claim, Solomon contends that his conviction was obtained through "prosecutorial misconduct" and "judicial abuse of discretion" during trial when the State was allowed to request in front of the jury that Solomon remove the makeup covering his facial tattoo.

---

[20]St. Rec. Vol. 5 of 7, Trial Transcript, p. 73 (Renkins), p. 100 (Venezia Singleton), 2/15/11.

Solomon argues that the State prejudiced the jury by making the motion in front of the jury rather than in a bench conference.  Under a broad reading, he also claims that the prejudice was compounded by the Trial Court's denial of the motion for mistrial after the jury had already heard the disparaging motion.

The State again asserts that this claim "arguably" was not preserved for appeal because Solomon's counsel eventually acquiesced to the removal of the makeup for the jury to see the tattoo.  This argument is baseless in light of the clear invocation of repeated objections to the disclosure and the motion for mistrial based on the contention that the jury was tainted by the initial motion and discussion held before them in the courtroom.  Nevertheless, for the following reasons, Solomon has failed to establish that appellate counsel had any basis to challenge the prosecutor's actions or the denial of the motion for mistrial based on the comments made before the jury or the directive that he remove the makeup.

Although Solomon uses the phrases "prosecutorial misconduct" and "judicial abuse of discretion," the claim he asserts is one addressed by the Supreme Court under the Fifth Amendment privilege against self-incrimination before the jury.  The State of Louisiana has long followed the clear statements of the Supreme Court which hold that there is no misconduct or violation of a defendant's constitutional rights when the State compels the defendant to display certain identifiable physical characteristics, including tattoos, as part of the defendant's identification. *State v. Martin*, 519 So.2d 87, 90-91 (La. 1988) (citing *Schmerber v. California*, 384 U.S. 757 (1966)).

In *Schmerber*, the Supreme Court made clear that the accused's physical characteristics are not protected by the privilege against self-incrimination and may be offered to the trier of fact, i.e. the jury, as physical evidence.  *Schmerber*, 384 U.S. at 763-64.  The Supreme Court recognizes no

constitutional violation when a defendant is compelled before a jury to "submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture." *Id*., at 764.  The *Schmerber* rationale has been followed in a number of other Supreme Court cases, each of which rejected the contention that a demonstration of an obscured physical characteristic in front of the jury infringed upon a defendant's constitutional rights.  *See United States v. Dionisio*, 410 U.S. 1 (1973) (defendant compelled before jury to speak to disclose his accent); *Gilbert v. California*, 388 U.S. 263 (1967) (defendant compelled to provide handwriting sample); *United States v. Wade*, 388 U.S. 218 (1967) (defendant required to utter words used by robber); *see also*, *United States v. Hubbell*, 530 U.S. 27, 35 (2000).

In the instances addressed in the foregoing precedent, the motions for and the disclosures of the physical trait were made during trial and before the jury.  The same is true in the Louisiana cases following this Supreme Court precedent.  *See State v. Wilson*, 329 So.2d 680 (La. 1976) (reveal a tattoo before the jury); *State v. Anthony*, 332 So.2d 214 (La. 1976) (defendant ordered to reveal a scar before the jury); *State v. Washington*, 294 So.2d 794 (La. 1974) (defendant ordered to reveal a bruise before the jury).

In addition, the Supreme Court has placed no limits on the timing or location of the request for the disclosure which would have made it improper for the State to have made the motion outside of the presence of the jury.  *Accord United States  v. Alpern*, 564 F.2d 755, 762 (7th Cir. 1977) ("We are unaware of any requirement that the display of physical characteristics of a defendant to the jury for purposes of identification must take place at any particular time in the course of the trial.").  There also is no prosecutorial misconduct where there has been no improper

action and no prejudicial effect on the substantive rights of the defendant.  *Foy v. Donnelly*, 959 F.2d 1307, 1316-17 (5th Cir. 1992).

In this case, Solomon readily admits that he intentionally covered his prominent facial tattoo with makeup to conceal it from the jury.  He claims he did so to avoid looking like a criminal in front of the jury.  However, Solomon, and his trial counsel, knew that the identification evidence was based in part on recognition of the facial tattoo, which was a part of Solomon's physical appearance at the time of the murder.  As was clearly demonstrated at trial, the intentional use of makeup to conceal the tattoo had a significant impact on the eyewitnesses' ability to identify him.  There is little question if any that the State had a right to move the trial court to have Solomon reveal the tattoo that, up to that point, had been obscured from the witnesses and the jury.  Therefore, there was no improper action by the prosecutor or impingement on Solomon's constitutional rights.

The fact that the motion was made in front of the jury was not prejudicial to Solomon such to render his trial unfair, where the State clearly had the right to have Solomon display the tattoo.  The jury was going to know at some point that the tattoo was not visible and then suddenly was visible; any reasonable juror would have reached the obvious, logical conclusion that the tattoo had been obscured and then was revealed.  In fact, Solomon through counsel stipulated that the jury should be so advised.  Thus, the State's request made in front of the jury was no different than those made in the cited precedents for the defendants to lift their shirts or remove other clothing to reveal their physical characteristics to the jury.  Solomon has failed to establish any misconduct by the prosecution, and no abuse of the Trial Court's discretion in denying the motion for mistrial based on the alleged misconduct.

Solomon, therefore, has shown no misconduct or constitutional violation for his appellate counsel to have asserted on direct appeal.  His counsel did not act deficiently in failing to do so. The denial of relief on this issue was neither contrary to nor an unreasonable application of *Strickland* and its progeny.  Solomon is not entitled to relief on this issue.

### C.    Denial of Motion to Suppress

Solomon next argues that his appellate counsel should have challenged the Trial Court's denial of the pretrial motion to suppress the identification made by Renkins.  He asserts that the Trial Court erred by ruling on the motion based on a black and white photocopy of the photographic line-up instead of viewing the original, color line-up shown to Renkins by Detective Robert Long.  The State in its response contends that there is no support for Solomon's contention that the Trial Court viewed a black and white copy.  In addition, the State argues that appellate counsel had no reason to question the holding because trial counsel did not object to the original, color line-up as suggestive based on the characteristics of the people shown in the array.  The State also contends that Solomon has failed to identify any particular differences between the copy and the original that would establish suggestiveness or error by the Trial Court that should have been asserted on appeal.

As an initial matter, it appears from a reading of the transcript of the suppression hearing that the State introduced black and white photocopies of the line-up arrays which were provided at the hearing to the Trial Court and defense counsel.[21]  The record is also clear that Solomon's appellate counsel challenged the denial of the motion to suppress on the grounds of suggestiveness. However, appellate counsel did not rely on the specious distinctions between a copy and the

---

[21]St. Rec. Vol. 5 of 7, Hearing Transcript, pp. 31-33, 37-38, 3/12/10.  On page 38, defense counsel clearly references "… a black and white photocopy of a front of a lineup… ."

original of the photo-array now urged by Solomon.  Instead, appellate counsel based the arguments on more specific considerations of reliability and suggestiveness as outlined in *Manson v. Brathwaite*, 432 U.S. 98 (1977) and related case law.[22]  As noted by the State, although unsuccessfully, appellate counsel obviously selected the arguments he believed to be more significant and potentially meritorious to bring to the state appellate court.  The law is clear that to provide effective assistance, appellate counsel is not required to bring every potential issue and even may decide not to assert every nonfrivolous claims to focus on those most likely to succeed.

Furthermore, Solomon's conclusory arguments fail to establish any error on the part of the Trial Court that would have warranted appellate review.  "Photo arrays may be suggestive if the suspect is the only person closely resembling the description, or if the subjects of the photographs are 'grossly dissimilar in appearance to the suspect.'"  *United States v. Saenz*, 286 F. App'x. 166, 169 (5th Cir. 2008) (quoting *United States v. Wade*, 388 U.S. 218, 233 (1967)).  While Solomon suggests disparity between the black and white and the color versions of the photo-arrays, he fails to provide any specific differences or anything telling of a suggestiveness in the chosen photographs which would conflict with the conclusions reached by the state trial court.

At the suppression hearing, the state trial judge concurred with defense counsel's recognition that the State should have produced the original, color photographic array.  However, after viewing the copy used by the State at the hearing, she was able to discern the characteristics of the persons in the photographs and satisfied that the individuals in each array had similar hair, facial, and age characteristics to avoid being suggestive.[23]   Solomon's trial counsel made no

---

[22]Counsel argued such matters as the timing of the identifications, the opportunity for the witnesses to view, the likelihood of accuracy, and outside influences on the identifications.

[23]St. Rec. Vol. 5 of 7, Hearing Transcript, pp. 32-33, 3/12/10.

objection to that part of the Trial Court's ruling.  His counsel instead argued that there was more to a suggestiveness determination than the pictures on the array, and argued much the same arguments presented by appellate counsel on direct appeal.  While the Trial Court declined to find suggestiveness on any ground, she ordered the State to provide defense counsel with a color photograph of the front of the lineups as evidence in preparing for trial.  At no time after that, including at trial, did Solomon's counsel challenge the suggestiveness of the color array based on the characteristics of the persons in the photographs.

The record demonstrates no basis for appellate counsel to have asserted that the Trial Court erred in relying on the photocopy, even if black and white, to resolve that the array was not suggestive.  Furthermore, appellate counsel was well within the ambit of reasonable performance to pursue other, more significant grounds to challenge the denial of the motion to suppress.

The denial of relief on this issue was not contrary to or an unreasonable application of *Strickland*.  Solomon is not entitled to relief on this issue.

### D.  <u>Manslaughter as a Responsive Verdict</u>

Solomon also alleges that appellate counsel was ineffective for failing to assert on appeal that the state trial court erred when it failed to remove manslaughter from the jury instructions or verdict form as a responsive verdict based on the lack of evidence at trial to support the charge. The State argues that appellate counsel did not act deficiently or prejudicially because Louisiana law allowed for manslaughter to remain as a responsive verdict and the claim would have been found meritless by the appellate court.

Pursuant to La. Code Crim. P. art. 814(A), manslaughter is a responsive verdict to the charge of second degree murder.  A state trial court is also required to charge the jury as to all responsive verdicts included under Article 814.  La. Code Crim. P. art. 803.  As argued by the

State, Solomon misconstrues the application of La. Code Crim. P. art. 814(C), which allows for the redaction of a responsive verdict based on the evidence presented at trial.  In applying the language of the statute, the Louisiana courts consistently hold that, when there is no objection by the defense, the inclusion of the responsive verdict is appropriate.  *See State v. Porter*, 639 So.2d 1137, 1140-42 (La. 1994) (Article 814(C) was "not designed to give trial courts and prosecutors the option to strike a lesser offense as a responsive verdict in order to prevent the jury from returning a compromise verdict."); *see also*, *State v. Banks*, 128 So.3d 534, 542-44 (La. App. 5th Cir. 2013) (discussing the contemporaneous objection rule under La. Code Crim. P. art. 841 in conjunction with a challenge that a response verdict should not have been included).  The Louisiana Supreme Court has determined that "[i]t would be unfair to permit the Defendant to have the advantage of the possibility that a lesser 'compromise' verdict will be returned (as opposed to being convicted of the offense charged) and then to raise the complaint for the first time on appeal, that the evidence did not support the responsive verdict to which he failed to object."  *State ex rel. Elaire v. Blackburn*, 424 So.2d 246, 252 (La. 1982), *cert. denied*, 461 U.S. 959 (1983).  Armed with this knowledge, appellate counsel acted within reason in failing to urge a claim that had not been properly preserved for appeal.

In addition, counsel is not required to assert a claim that would not have been meritorious. Solomon's co-defendant, Michael Curtis, asserted pro se on direct appeal that his trial counsel was ineffective for failing to object to the inclusion of the responsive verdict of manslaughter based on the argument that there was insufficient evidence at trial to support that verdict.[24]  The Louisiana Fourth Circuit, relying on the *Strickland* standards, resolved that Curtis's trial counsel was not deficient because there was sufficient evidence to support a second degree murder conviction,

---

[24]*Curtis*, 112 So.3d at 333-34; St. Rec. Vol. 5 of 7, 4th Cir. Opinion, 2011-KA-1676, p. 16, 3/13/13.

rendering the inclusion of manslaughter as an appropriate responsive verdict, and it would have been reasonable trial strategy for counsel to have acquiesced to its inclusion in hopes that the jury would select this alternative verdict, which of course they did.  The Court recognized that this made a significant difference between the mandatory life sentence for second degree murder and the forty-year maximum for manslaughter.  For these reasons, the Court denied relief on Curtis's claim under *Strickland*.

It is reasonable for this Court to conclude that if Solomon's appellate counsel had challenged the inclusion of manslaughter as error, it would have been resolved in the same manner. Because there trial counsel did not object to the inclusion of manslaughter as a responsive verdict, the Louisiana Fourth Circuit would have only found error if the evidence was not sufficient to support the original charge of second degree murder.  *See State ex rel. Elaire*, 424 So.2d at 251; *Banks*, 128 So.3d at 542, 544.  The Louisiana Fourth Circuit, however, determined on direct appeal that there was sufficient evidence to support a second degree murder charge, although the jury returned a verdict of manslaughter.  Solomon therefore would not have been successful on a challenge to the inclusion of manslaughter as a responsive verdict.  Counsel's performance is not deficient for failing to raise a non-meritorious claim on direct appeal.

For these reasons, Solomon has not established that his appellate counsel was deficient or acted prejudicially in failing to include this issue on appeal.  The denial of relief on this issue was neither contrary to nor an unreasonable application of *Strickland*.  Solomon is not entitled to relief.

## VI.   <u>Non-unanimous Verdict</u>

Under a broad reading, Solomon claims that the La. Const. Art. I§17 and La. Code Crim. P. art. 782(A) are unconstitutional because they allow for a non-unanimous jury verdict in violation

of the Fourteenth Amendment Equal Protection Clause.  The State argues that the claim is meritless under prevailing Supreme Court law.

This type of challenge to the constitutionality of state law presents a pure question of law. *Ortiz v. Quarterman*, 504 F.3d 492, 496 (5th Cir. 2007).  Thus, Solomon can obtain federal habeas corpus relief as to this claim only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court law.  He has failed to meet this burden.

The decades-old and clearly established United States Supreme Court precedent applicable to this claim is directly contrary to Solomon's argument.  In *Apodaca v. Oregon*, 406 U.S. 404 (1972), and *Johnson v. Louisiana*, 406 U.S. 356 (1972), the United States Supreme Court upheld the constitutionality of state laws – including Louisiana's – that permitted a criminal defendant to be convicted by less than unanimous jury votes.  While the Supreme Court itself has recently described the *Apodaca* and *Johnson* holdings as "the result of an unusual division among the Justices," it also made clear in the same breath that *Apodaca* and *Johnson* remain the law of the land:

> The [Supreme] Court has held that although the Sixth Amendment right to trial by jury requires a unanimous verdict in federal criminal trials, <u>it does not require a unanimous verdict in state criminal trials.</u>

(citations omitted, emphasis added) *McDonald v. City of Chicago*, 561 U.S. 742, 766 n.14 (2010).

In the habeas corpus context, the Fifth Circuit has recognized that a prisoner's constitutional challenge to a state court conviction by a non-unanimous jury verdict must be rejected under *Apodaca* and *Johnson*:

> We first note that we cannot find, as petitioner would like, that the state court violated any federal right to a unanimous verdict in state court, because the Supreme Court "has not held that the Constitution imposes a jury unanimity requirement."

*Hoover v. Johnson*, 193 F.3d 366, 369 (5th Cir. 1999) (quoting *Richardson v. United States*, 526 U.S. 813, 821 (1999)).

Solomon concedes in his own pleadings that this clearly established precedent in *Apodaca* and *Johnson* is contrary to his position. His general arguments concerning "disparate racial discrimination" as a motivating factor behind the laws on non-unanimous verdicts merely seeks change in the current law and does not demonstrate contrary or unreasonable application of the clearly established Supreme Court precedent applicable to his case.

Simply stated, Solomon asks this Court to reconsider the Supreme Court's holdings in *Apodaca* and *Johnson*. On federal habeas corpus review, however, it is not the function of this Court to reassess the law pronounced by the Supreme Court. That is not the role of this Court under the AEDPA. *See White*, 134 S. Ct. at 1706. Instead, the standard to be applied is whether the state courts' decisions to uphold Solomon's conviction based on a non-unanimous jury verdict was contrary to or involved an unreasonable application of <u>clearly</u> <u>established</u> United States Supreme Court precedent. Under *Apodaca* and *Johnson* and its progeny, including the decisions cited above, the state courts' decisions in this regard were wholly consistent with Supreme Court precedent, and Solomon is not entitled to federal habeas corpus relief on this claim.

**VII.   <u>Recommendation</u>**

For the foregoing reasons, it is **RECOMMENDED** that Demond Solomon's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[25]

New Orleans, Louisiana, this 31st day of January, 2017.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[25]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.